UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

J.A.L., JR. (XXX-XX-2983)                    CIVIL ACTION NO. 10-cv-1272

VERSUS                                       JUDGE HICKS

U.S. COMMISSIONER, SOCIAL                    MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

Plaintiff filed an application for disability benefits based on a number of health problems. ALJ Scott Staller held a hearing and issued a written decision that denied the claim. He found that Plaintiff, who was then 45 years old and had past work experience as an automobile detailer and a retail sales associate, was not disabled because he could perform the demands of other jobs available in the economy, such as telephone quotation clerk.

The Appeals Council denied Plaintiff's request for review. He then filed this civil action to challenge the Commissioner's final decision. Plaintiff, who was 5'10" and 340 lbs. at the time of an evaluation shortly before his hearing, argues that the ALJ's decision should be reversed because the ALJ did not give a specific explanation of how Plaintiff's obesity affected his ability to work. It is recommended, for the reasons that follow, that the Commissioner's decision be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Summary of the Evidence**

Plaintiff operated his own business, a car detail and cleaning shop, for more than 12 years, but it closed because of economic conditions. He then worked at jobs such as a sales associate at Lowe's and Wal-Mart. He had a heart attack in October 2005, but he returned to work at Wal-Mart until the company "medicaled" him out in April or May 2008 because he could not perform his job.

Plaintiff testified that he lives with his wife, who works, and two children. Plaintiff said he was unable to work because his feet and legs hurt constantly. Plaintiff testified, "it's like somebody's got electricity hooked to the bottom of my feet 24/7 and it's just constantly shooting pains in my feet through the nerve endings and all the way out my toes." He said he "can't stand any length of time," and is out of bed for only a short time each day when he

sits in a chair with his feet up. He takes a number of medications to deal with his diabetes, high blood pressure, and other health problems, but his only pain medication is Lortab 10, which he uses to help go to sleep at night. Plaintiff testified that he could walk/stand for no more than 10 or 15 minutes. He said he could sit with his feet up as long as he needed, but otherwise:

> Like right now they're hurting and I need to move and stand up or try to readjust because they hurt. Like no more than an hour like this. It's too long. Thirty minutes is too long like this.

Tr. 20-41.

Plaintiff's treating physician, Dr. Anderson-Doze, issued a "To Whom It May Concern" letter that said Plaintiff had been under her care since November 2007. He had been diagnosed with Type II Diabetes, hypertension, morbid obesity, coronary artery disease, and status post a myocardial infarction. She said Plaintiff "has difficulty ambulating secondary to diabetic neuropathy and requires multiple medicines to control his pain." She added that he experiences "intermittent edema to his lower extremities" that also compromises his ability to walk well. Tr. 179.

Dr. Clint Wilson performed a consultative examination of Plaintiff in August 2008, approximately three months before the Agency hearing. He noted that Plaintiff, who was 5'10" and 340 lbs., had a history of diabetes, hypertension, and heart attack. Plaintiff reported that he was independent with activities of daily living except when his legs hurt, which he said improved with elevation. The other aspects of the examination were relatively

normal. No problems were noted in the respiratory and cardiovascular exams, and there were no musculoskeletal issues other than the feet/legs problems. Plaintiff did have an antalgic gait secondary to foot pain. He was able to rise from a sitting position without assistance, stand on tiptoes, heels, and tandem walk without problems. He could bend and squat without difficulty, and he had 5/5 grip strength with adequate fine motor movements, dexterity, and ability to grasp objects with either hand. The feet were tender to the touch but had normal arches. Dr. Wilson noted, "no edema, no cyanosis, no erythema." Dr. Wilson concluded, based on the examination, that Plaintiff "should be able to sit for a full workday" and "can walk/stand for the majority of a workday, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, carry out and remember instructions." Tr. 166-69.

**The ALJ's Analysis**

The ALJ analyzed the claim under the familiar five-step sequential analysis. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007). He found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. He next considered at step two whether Plaintiff had "severe impairments," which includes any impairment unless it is such a slight abnormality that it has a minimal effect that would not be expected to interfere with the person's ability to work. See Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy, hypertension, high cholesterol, coronary

artery disease status post a myocardial infarction in 2006, and obesity. The ALJ found at step three that the impairments were not so severe as to meet or equal one of the listed impairments that requires a finding of disabled without further analysis.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"). He discussed the results of the consultative examination, Dr. Anderson-Doze's letter, Plaintiff's testimony, and the ALJ's observation of Plaintiff at the hearing. He found that Plaintiff had "minimal credibility" about the extent of his limitations because the claims were not supported by the objective medical evidence. The consultative examination, in particular, revealed essentially normal results that were incompatible with Plaintiff's testimony that he was effectively bedridden. Plaintiff, despite his complaints about inability to sit, was able to sit through the one-hour hearing without any apparent pain or limitation. After assessing all of this evidence, the ALJ found that Plaintiff had the RFC to perform a limited range of light work.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10. The ALJ found that Plaintiff could not perform the full range of light work because he could stand or walk only two hours in a workday, must avoid heights and dangerous machinery, and could engage in no more than frequent use of foot pedals or require feeling in feet.

A vocational expert ("VE") testified that a person with Plaintiff's RFC and other vocational factors could not perform the demands of his past relevant work. The ALJ accepted that testimony and entered a finding in favor of Plaintiff at step four. He then turned to step five, which asks whether the claimant has the ability to perform the demands of other jobs that exist in significant numbers in the national economy. The VE identified the job of telephone quotation clerk, which the Dictionary of Occupational Titles describes as a sedentary job that involves answering telephone calls from customers and providing information posted on an electronic quote board. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled within the meaning of the regulations.

**The Obesity Issue**

Plaintiff complains that the ALJ did not specifically discuss the impact of his obesity. The regulations once included a listing for obesity, but that listing was deleted. The current policy is found in Social Security Ruling 02-1p. It explains that obesity is a risk factor that increases a person's chances of developing impairments in most body systems. For example, it complicates cardiovascular, respiratory, and musculoskeletal systems, and it increases the risk of impairments such as diabetes and hypertension. The Ruling states that the Agency "will consider obesity" at each of the five steps of the sequential analysis.

With regard to evaluating obesity when assessing the RFC and deciding steps four and five, the Ruling states that obesity can cause limitation of function, which depends on many factors, including where the excess weight is carried and what particular problems it causes

or aggravates. A person may have obesity-related limitations of functions such as sitting, standing, or walking, or he may be unable to manipulate objects because of fatty tissue in the hands and fingers. He may have sleep apnea or be unable to tolerate extreme heat. The Ruling states: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."

Plaintiff complains that the ALJ did not specifically discuss how Plaintiff's obesity was assessed during the analysis. It is true that the ALJ did not, at each critical step, specifically write his thoughts on how obesity affected the analysis. He very clearly, however, was aware of the obesity, which he recognized as a severe impairment, and which went hand in hand with all of the other impairments. Plaintiff's weight and related health problems were also assessed in detail in the consultative examination, which the ALJ relied upon. When the decision is taken as a whole, it adequately explains the impact of obesity on Plaintiff's limitations. In any event, Plaintiff has not articulated any obesity-caused limitation beyond those recognized by the ALJ. Absent such an additional limitation that would prevent the performance of the job of telephone quotation clerk, the lack of a more specific discussion of obesity is at best a procedural and harmless error.

This result is supported by Skarbek v. Barnhart, 390 F.3rd 500, 504 (7th Cir. 2004). The claimant in that case argued that the ALJ failed to specifically discuss obesity, but the court affirmed the denial of benefits because the ALJ indirectly factored in obesity when he adopted the findings of reviewing doctors who were aware of the obesity, and the claimant

did not explain how his obesity would have further impaired his ability to work. See also Lewis v. Commissioner, 2008 WL 5459741 (W.D. La. 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-caused limitation that was not considered by the ALJ). The court should not vacate a decision based on a potential procedural flaw unless the substantial rights of a party have been affected. Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989). Plaintiff has not made such a showing.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

    THUS DONE AND SIGNED in Shreveport, Louisiana, this 21st day of October, 2011.

                                          MARK L. HORNSBY
                                    UNITED STATES MAGISTRATE JUDGE